CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
AUG 11 2011
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| BEVERLY L. REEDY, | Civil Action No. 5:10CV00134 |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | By: Hon. Glen E. Conrad Chief United States District Judge |
| Defendant. | |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to §205(g) of the Act, 42 U.S.C. § 405(g). As reflected by the memoranda and argument submitted by the parties, the issues before this court are whether the Commissioner's final decision is supported by substantial evidence, and if it is not, whether plaintiff has met the burden of proof as prescribed by and pursuant to the Act. Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Beverly L. Reedy, was born on January 27, 1970, and eventually completed the eleventh grade in school. Sometime later, Mrs. Reedy earned a GED. Plaintiff has been employed as an assembly line worker, farm laborer, machine operator, and sanitation worker. It seems that she last worked on a regular and sustained basis in 2001. On September 17, 2004, Mrs. Reedy filed applications for disability insurance benefits and supplemental security income benefits. Plaintiff alleged that she became disabled for all forms of substantial gainful employment on December 31, 2001 due to bipolar disorder, fibromyalgia, hyperglycemia, bad nerves, anxiety, sleep apnea, and possible early Parkinson's disease. Mrs. Reedy now maintains that she has remained disabled to the

present time. As to her claim for disability insurance benefits, the record reveals that plaintiff met the insured status requirements of the Act through the fourth quarter of 2006, but not thereafter. See gen., 42 U.S.C. §§ 416(i) and 423(a). Consequently, Mrs. Reedy is entitled to disability insurance benefits only if she has established that she became disabled for all forms of substantial gainful employment on or before December 31, 2006. See gen., 42 U.S.C. § 423(a).

Plaintiff's claims were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated April 20, 2007, the Law Judge also determined that Mrs. Reedy was not disabled. The Law Judge found that plaintiff suffers from severe impairments including degenerative disc disease of the lumbar and lumbosacral spine; fibromyalgia; lumbago; neuralgia; myalgia; and myositis. Because of these conditions, the Law Judge held that Mrs. Reedy was disabled for her past relevant work roles. However, the Law Judge determined that plaintiff retained sufficient functional capacity to perform a limited range of sedentary work activity. The Law Judge assessed plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry up to 10 pounds, stand and walk 2 hours, and sit 6 hours during an 8 hour workday, while performing only occasional stooping, kneeling, crawling and crouching. The claimant should avoid work around heights and hazardous machinery and have the ability to sit and stand at will.

( TR 22). Given such a residual functional capacity, and after considering Mrs. Reedy's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge ruled that plaintiff remained capable of performing several specific sedentary work roles which exist in significant number in the national economy. Accordingly, the Law Judge ultimately concluded

that plaintiff was not disabled, and that she was not entitled to benefits under either federal program. See 20 C.F.R. §§ 404.1520(g) and 416.920(g). Sometime after the issuance of the Law Judge's opinion, plaintiff submitted additional medical evidence to the Social Security Administration's Appeals Council. However, the Appeals Council eventually adopted the Law Judge's opinion as the final decision of the Commissioner. Having exhausted all available administrative remedies, Mrs. Reedy then appealed to this court.

By memorandum opinion and order entered May 8, 2009, the court remanded Mrs. Reedy's claims for benefits to the Commissioner for further consideration. See Reedy v. Astrue, No. 5:08CV00072, 2009 WL 1321689 (W.D.Va. May 8, 2009). Citing Alexander v. Apfel, 14 F.Supp. 2d 839 (W.D.Va. 1998), the court ruled that the Appeals Council erred in not giving reasons for its holding that the new evidence submitted by Mrs. Reedy following the Law Judge's denial of benefits, was not such as to justify further administrative consideration. On remand, the matter was assigned to a new Administrative Law Judge for supplemental proceedings. The second Law Judge conducted a new administrative hearing. At the hearing, two medical advisors and a vocational expert testified in addition to Mrs. Reedy and her husband.

The second law judge produced an opinion on November 25, 2009. Relying on the testimony of one of the medical advisors, as well as on the evidence cited by the court in remanding the case to the Commissioner, the Law Judge held that Mrs. Reedy became disabled for all forms of substantial gainful employment on March 12, 2008. The Law Judge concluded that plaintiff was disabled for purposes of her application for supplemental security income benefits. However, the Law Judge determined that plaintiff was not disabled on or before December 31, 2006, the date of termination of her insured status, so as to entitle her to disability insurance benefits. As to this

earlier period, the Law Judge ruled that Mrs. Reedy retained sufficient functional capacity to perform a limited range of sedentary work activity. Given a residual functional capacity for a limited range of sedentary exertion, and after considering plaintiff's age, education, and prior work experience, as well as testimony from the vocational expert, the Law Judge concluded that plaintiff remained capable of performing several specific sedentary work roles which exist in significant number in the national economy at all relevant times prior to the termination of her insured status. Accordingly, the Law Judge ultimately concluded that Mrs. Reedy was not disabled for purposes of her application for disability insurance benefits. See 20 C.F.R. § 404.1520(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having again exhausted her administrative remedies, Mrs. Reedy has filed a new appeal to this court. Thus, the issue of plaintiff's entitlement to disability insurance benefits is now before the court for a second time.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. In denying Mrs. Reedy's claim

for disability insurance benefits, the Law Judge relied, in part, on the testimony of Dr. Charles Cooke, one of the medical advisors. Dr. Cooke recognized that plaintiff has a history of severe musculoskeletal discomfort, especially in her lumbosacral spine. Dr. Cooke opined that plaintiff became disabled on March 12, 2008, when she had a morphine pump surgically implanted in order to provide medication for pain control. Dr. Cooke reasoned that with the amount of medication that plaintiff was taking following insertion of the morphine pump, she could not possibly work. (TR 956). As to the period prior to the insertion of the morphine pump, Dr. Cooke felt that plaintiff retained sufficient physical capacity to perform sedentary levels of exertion. However, the court notes that it is essentially undisputed that the same pain killing medications supplied by the morphine pump were being administered orally at least as early as 2006. More to the point, however, the court concludes that the record in this case clearly establishes that plaintiff's subjective discomfort had reached disabling levels of severity at a time well before termination of plaintiff's insured status. The Law Judge's opinion in discounting the overwhelming evidence of disabling pain is not supported by substantial evidence. Given the findings and opinions of the physicians who actually treated Mrs. Reedy, the court concludes that plaintiff has met the burden of proof in establishing that she became disabled in 2006 rather than in 2008.

Dr. Charles L. Cooke testified at the administrative hearing as a medical advisor. Dr. Cooke is an internist with a specialty in rheumatology. (TR 951). Dr. Cooke reviewed all the medical evidence and opined that plaintiff's various impairments do not meet or equal any listed impairment under Appendix 1 to Subpart P of the Administrative Regulations Part 404.[1] Nevertheless, Dr.

---

[1] Under 20 C.F.R. 404.1520(d), if a claimant's impairments meet or equal a listing under Appendix 1, the claimant will be found to be disabled for all forms of work, without consideration of factors such as age, education, or prior work experience.

5

Cooke testified that the medications Mrs. Reedy was receiving after insertion of the morphine pump were such as to render her totally disabled for all forms of work. (TR 956-57). Thus, Dr. Cooke opined that plaintiff did not become disabled until March 12, 2008, the date of the operative procedure. Dr. Cooke was unable to give an opinion as to whether the narcotic drugs administered by the morphine pump were essentially the same as those that plaintiff was taking by mouth during earlier years. (TR 972). However, the record establishes that plaintiff was taking essentially the same types and dosages of medication, which Dr. Cooke held to be disabling in impact, well before insertion of the morphine pump.

Dr. Cooke opined that a combination of Demerol, morphine, Percocet, and methadone, would produce such drowsiness as to prevent regular and sustained work activity. At the administrative hearing, plaintiff's attorney asked her about the medications that she was taking prior to implantation of the morphine pump:

> ATTY: Well let's focus on, let's focus on the issue here. Back in 1996, can you remember the drugs that you were taking, before the pain stimulator was put in?
>
> CLMT: Not '96, I wasn't on anything. 2006.
>
> ATTY: I mean 2006, I keep saying '06.
>
> CLMT: 2006 I was on morphine and Demerol and Percocets, and the Demerol and morphine was 100 milligrams each, and yes, I was taking those every single day. And the Demerol and morphine was three times a day, and the Percocet was three time. Now the Percocet, what is that like 5/25 or 10/25, something like that, that was three times a day. And the Ambien that was two pills at bedtime of 20 milligrams each, so that was 40 milligrams of Ambien. There's certain things that I can remember, and there's things that I can't remember I did this morning.

6

(TR 974). Dr. Cooke questioned whether Mrs. Reedy's memory about her medications was accurate. (TR 975-76). Consequently, sometime after the hearing, plaintiff submitted a letter from Dr. James R. Reid, IV, a treating physician who had seen Mrs. Reedy for over ten years. Dr. Reid commented as follows:

> Beverly Reedy's drug regimen in 2006, in particular in December of 2006, involved multiple narcotics including Methadone and Percocet. She might have been switched from Percocet to MS Contin in December of 2006. The dose of Methadone that she was on at that time was 40 mg. three times a day, which is a very large dose of Methadone. It certainly compares in potency to a morphine pain pump. Any rationale that would give her disability because of the narcotic usage of a morphine pain pump would apply to the large amounts of narcotics that she was taking in 2006 as well.

(TR 702). Furthermore, the clinical notes also reveal that plaintiff was taking essentially the same narcotic medications for pain control both before and after implantation of the morphine pump. See, eg., TR 432, 484, 486, 488, and 517. In short, assuming that Dr. Cooke correctly determined that the level of medication being taken by Mrs. Reedy after insertion of the morphine pump was such as to produce disabling side effects, the court concludes that plaintiff has met the burden in establishing that she was taking essentially the same medications, with essentially the same side effects, at least as early as 2006.

More generally, the court believes that the Administrative Law Judge's opinion is simply not consistent with the body of objective medical records and opinion evidence which has been developed in the treatment of plaintiff's severe lower back discomfort. Mrs. Reedy has complained of progressively worsening lower back pain since 2003. Her most recent MRI has been interpreted as demonstrating "multilevel degenerative disc disease with multilevel disc herniations and protrusions with some foraminal narrowing and some irritations to the nerve roots." (TR 443). She is not a candidate for back surgery because of the extent of the degeneration. (TR 443, 527). All

7

three of the doctors who have regularly treated Mrs. Reedy have determined that she is unable to engage in any sustained work activity.

As noted above, Dr. James Reid, IV, has served as plaintiff's treating physician over a period of several years. On May 2, 2005, Dr. Reid completed a physical capacity questionnaire which indicates that plaintiff is disabled for all forms of work activity. (TR 357-60). Dr. Reid referred plaintiff to Dr. John Sherry, a pain management specialist. Dr. Sherry determined that plaintiff suffers from significant disc degeneration in her lumbar and cervical spine. Dr. Sherry opined that plaintiff can stand and walk for less than two hours in an eight hour day, and that she can sit for about two hours. (TR 408). Dr. Sherry determined that plaintiff has experienced a very poor response to oral medication, and he suggested use of a spinal cord stimulator. (TR 406). Later medical records reveal that the stimulator was not successful in eliminating plaintiff's pain. (TR 527). More recently, Mrs. Reedy has been treated by Dr. Robert Audet and Dr. Bart Balint, both of whom are pain management specialists. Dr. Audet noted that plaintiff's attempts to treat with narcotic pain medications and nerve block injections have been unsuccessful. On March 5, 2007, Dr. Audet produced findings as to plaintiff's residual functional capacity that are consistent with the existence of total disability. (TR 489-91). Dr. Balint performed the morphine pump implant in 2008.

In denying plaintiff's claim, the Administrative Law Judge relied largely on the reports from nonexamining state agency physicians and the testimony of the medical advisor, Dr. Cooke. In passing, the court notes that the state agency physicians completed their record reviews sometime before Dr. Audet began his treatment, and before the most recent MRI and the implantation of the morphine pump. As for Dr. Cooke, the court notes that the medical advisor focused his evaluation

on the existence of a listed or equivalent impairment. Indeed, Dr. Cooke specifically stated that he was not considering plaintiff's "subjective complaints" in his assessment of Mrs. Reedy's capacity for work activity. (TR 968, 969).

Under 20 C.F.R. § 404.1527(d)(1), it is explicitly provided that, generally, more weight will be given to the opinion of a medical source who has actually examined the claimant. Moreover, 20 C.F.R. § 404.1527(d)(2) directs that, generally, more weight is given to the opinions from treating sources, since such professionals are more likely able to provide a detailed, longitudinal picture of the claimant's medical impairments. Finally, under 20 C.F.R. § 404.1527(d)(5), it is noted that more weight is accorded to the opinion of a specialist about medical issues related to the area of specialty.

In the instant case, it is clear that Dr. Reid, Dr. Sherry, and Dr. Audet treated Mrs. Reedy on multiple occasions. All three physicians relied on objective studies and their own clinical findings in assessing the severity of plaintiff's back condition. Dr. Audet specifically referenced an MRI in concluding that plaintiff's condition was not subject to surgical correction. Dr. Sherry and Dr. Audet are pain management specialists. Both specialists employed conservative measures as well as unconventional means in the attempt to control plaintiff's lower back discomfort. All three treating sources produced opinions indicating that Mrs. Reedy can no longer be expected to engage in regular, sustained, and full-time work activity. The court concludes that plaintiff has met the burden of proof in establishing total disability for all forms of substantial gainful employment.

In passing, the court notes that circumstantial evidence in this case strongly supports the plaintiff's claim for benefits. Stated differently, there is no evidence which indicates that Mrs. Reedy is a hypochondriac, or that she has overstated or misrepresented her pain symptoms. Indeed, the court believes that the Law Judge's assessment is somewhat contrary to good, common sense.

Plaintiff's earnings record reflects regular income through 2001. There is some indication that, even after onset of her early symptoms, Mrs. Reedy continued to work on her family's farm. Since onset of her back problems, Mrs. Reedy has pursued several different courses in an attempt to obtain relief from her pain. Plaintiff has seen three different pain specialists. She has undergone various diagnostic procedures, including multiple MRIs and a CT scan. She has submitted to steroid injections in the attempt to control her pain, and, sometime later, she used a spinal stimulator in an attempt to manage her symptoms. Most recently, plaintiff has undergone surgical implantation of a morphine pump in an attempt to maximize the effect of her pain medications. All of these procedures are highly inconvenient, worrisome, and painful in and of themselves. Simply stated, Mrs. Reedy's case does not present a picture of a malingerer, or a claimant motivated only by a desire for secondary gain.

In summary, the administrative record establishes that plaintiff has a medical history which is consistent with her complaints of severe and disabling pain. All of the doctors who have actually seen and treated Mrs. Reedy have offered diagnoses, and provided treatment measures, which are consistent with the existence of conditions which can produce severe and debilitating symptoms. No doctor who has actually examined and treated Mrs. Reedy has concluded that her symptoms are exaggerated, or inconsistent with the objective findings. Furthermore, it is undisputed that plaintiff's doctors have prescribed medication which can be expected to produce debilitating symptoms. The medical advisor opined that such symptoms are disabling in overall impact. For all of these reasons, the court concludes that Mrs. Reedy has met the burden of proof in establishing total disability for all forms of substantial gainful employment at a time prior to the termination of her insured status. Based on Dr. Audet's treatment notes, and considering the point in time at which plaintiff's

physicians first found it necessary to employ the spinal cord stimulator, the court concludes that plaintiff has met the burden in establishing that she became disabled for all forms of substantial gainful employment as of January 11, 2006.

For the reasons stated, the court is constrained to conclude that the Commissioner's final decision is not supported by substantial evidence. Defendant's motion for summary judgment must, therefore, be denied. Upon the finding that the plaintiff has met the burden of proof as prescribed by and pursuant to the Act for entitlement to disability insurance benefits, judgment will be entered in favor of plaintiff. The final decision of the Commissioner will be reversed, and the case remanded for the establishment of proper benefits. An order and judgment in conformity will be entered this day.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 11th day of August, 2011.

_____
Chief United States District Judge